COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Elder
Argued at Richmond, Virginia


BRADFORD RAMEY INGRAM
                                        OPINION BY
v.    Record No. 0873-98-2          JUDGE LARRY G. ELDER
                                         MAY 25, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Timothy J. Hauler, Judge

            David M. Gammino for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Bradford Ramey Ingram (appellant) appeals from his bench

trial conviction for driving under the influence (DUI), second

offense, pursuant to Code § 18.2-266.  On appeal, he contends

the administrative suspension of his license pursuant to Code

§ 46.2-391.2 was invalid because he did not refuse to take the

breath test but rather was prevented from doing so by his

asthma.  As a consequence, he contends that the suspension was

punitive and that his subsequent DUI conviction violated the

Double Jeopardy Clause.  For the reasons that follow, we affirm

appellant's conviction.

                              I.

                            FACTS

     Appellant was arrested on September 10, 1997, for driving

while under the influence of alcohol, his second such offense

within five years.  Because appellant had asthma, he submitted

to a blood test rather than a breath test.  Based on his

inability to take a breath test, the Commonwealth

administratively suspended his operator's license for seven days

pursuant to Code § 46.2-391.2.  Although the Notice of

Administrative Suspension issued to appellant indicated he could

challenge the suspension by filing a motion for review, the

record contains no evidence indicating that appellant filed such

a motion.

     Following appellant's conviction on the underlying DUI

charge in general district court, appellant appealed that

conviction and raised a plea of former jeopardy.  By written

motion, he asserted that, because his asthma prevented him from

taking the breath test, the suspension was "arbitrarily imposed

without a legitimate administrative basis" and, therefore, that

"the suspension clearly rises to the level of a punishment,"

rendering any further punishment for the DUI offense a double

jeopardy violation.

     The trial court ruled as follows:

          I don't believe it was the intent of that
          statute to be thwarted by the fact that
          someone with legitimate and valid reasons

                              -

could not present a breath sample and I think the statute is drafted in such a manner that your client did have the opportunity to appeal that administrative revocation.

I'm finding that the revocation was administrative in nature . . . .

Following the denial of his motion, appellant stipulated that the evidence--including a certificate of analysis showing a blood alcohol level of 0.17 percent and a prior DUI conviction entered September 25, 1995--was sufficient to convict him, and the trial court found him guilty.

II.

ANALYSIS

Code § 46.2-391.2(A) provides as follows:

If a breath test is taken pursuant to § 18.2-268.2 or any similar ordinance of any county, city or town and the results show a blood alcohol content of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath, or the person refuses to submit to the breath test in violation of § 18.2-268.3 or any similar local ordinance, and upon issuance of a petition or summons, or upon issuance of a warrant by the magistrate, for a violation of §§ 18.2-51.4, 18.2-266 or § 18.2-268.3, or any similar local ordinance, the person's license shall be suspended immediately for seven days . . . .

Code § 46.2-391.2(C) provides that "[a]ny person whose license or privilege to operate a motor vehicle has been suspended under subsection A may, during the period of the suspension, request the general district court . . . to review that suspension" and that "the court shall rescind the suspension" if "the person

-

proves to the court by a preponderance of the evidence that the arresting officer did not have probable cause for the arrest, that the magistrate did not have probable cause to issue the warrant, or that there was not probable cause for issuance of the petition."

We previously have held that an administrative license suspension issued pursuant to Code § 46.2-391.2 is not "punishment within the meaning of the double jeopardy clause"; therefore, a DUI prosecution instituted after a license suspension does not constitute double jeopardy. See Tench v. Commonwealth, 21 Va. App. 200, 208, 462 S.E.2d 922, 925 (1995), cited with approval in Brame v. Commonwealth, 252 Va. 122, 130-32, 476 S.E.2d 177, 182-83 (1996). In reaching this conclusion, we relied on the test set out in United States v. Halper, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), in which the United States Supreme Court held that "the labels 'civil' and 'criminal' are not controlling" and that a civil sanction nevertheless may constitute punishment under certain circumstances. Tench, 21 Va. App. at 204-05, 462 S.E.2d at 924 (quoting Halper, 490 U.S. at 447, 109 S. Ct. at 1901).

In so doing, we noted that "the purpose of revoking a driver's license is 'not to punish the offender but to remove from the highways an operator who is a potential danger to other users.'" Id. at 205, 462 S.E.2d at 924 (quoting Prichard v. Battle, 178 Va. 455, 463, 17 S.E.2d 393, 396 (1941)). We also

-

examined the legislative history behind the enactment of the suspension statute, which provided that the legislature was "motivated by its desire to reduce 'alcohol-related crashes, fatalities, and injuries.'" Id. (quoting S.J. Res. 172, 1989 Va. Acts). As a result, we held that the license suspension "is a remedial sanction because its purpose is to protect the public from intoxicated drivers and to reduce alcohol-related accidents" and, therefore, that it "does not constitute punishment for purposes of double jeopardy." Id. at 205-06, 462 S.E.2d at 924.

After our ruling in Tench, the United States Supreme Court reconsidered its holding in Halper, upon which our analysis in Tench was based. See Hudson v. United States, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). In Hudson, the Supreme Court held that "Halper's deviation from longstanding double jeopardy principles was ill considered," and it "reaffirmed the previously established rule exemplified in United States v. Ward, 448 U.S. 242, 248-49[, 100 S. Ct. 2636, 2640-41, 65 L. Ed. 2d 742] (1980)." Hudson, 522 U.S. at 96, 101, 118 S. Ct. at 491, 494. Under the longstanding double jeopardy principles outlined in Ward, determining "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction," and "[a] court must first ask whether the legislature '. . . indicated either expressly or impliedly a preference for one label or the other.'" Id. at 99, 118 S. Ct.

-

at 493 (quoting Ward, 448 U.S. at 248, 100 S. Ct. at 2641).

Because "the Halper Court bypassed [this] threshold question,"

Hudson, 522 U.S. at 101, 118 S. Ct. at 494, we did not expressly

address this issue in Tench. However, our analysis in Tench, as

outlined above, makes clear that the administrative license

suspension is civil in nature.

Under the traditional double jeopardy analysis re-adopted

in Hudson, even where the legislature shows an intent to create

a civil penalty, the court must consider "'whether the statutory

scheme was so punitive either in purpose or effect,' as to

'transfor[m] what was clearly intended as a civil remedy into a

criminal penalty.'" Hudson, 522 U.S. at 99, 118 S. Ct. at 493

(citations omitted). Factors which "provide useful guideposts"

in making this determination include:

> (1) [w]hether the sanction involves an
> affirmative disability or restraint; (2)
> whether it has historically been regarded as
> a punishment; (3) whether it comes into play
> only on a finding of scienter; (4) whether
> its operation will promote the traditional
> aims of punishment--retribution and
> deterrence; (5) whether the behavior to
> which it applies is already a crime; (6)
> whether an alternative purpose to which it
> may rationally be connected is assignable
> for it; and (7) whether it appears excessive
> in relation to the alternative purpose
> assigned.

Id. at 99-100, 118 S. Ct. at 493 (quoting Kennedy v.

Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S. Ct. 554, 567-68, 9

L. Ed. 2d 644 (1963)) (internal quotation marks omitted). As

-

the Court emphasized, however, "'these factors must be considered in relation to the statute on its face,' and 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  Id. at 100, 118 S. Ct. at 493 (citations omitted).

As we decided in Tench, the legislature clearly intended for the administrative license suspension to be a civil sanction.  We also hold, under the factors outlined above, that the statutory scheme is not so punitive as to transform "a civil remedy into a criminal penalty."  See Powers v. Commonwealth, 694 N.E.2d 324 (Mass. 1998) (holding that suspension of license following alcohol-related accident under statute permitting suspension based on driver's "immediate threat to public safety" is not punishment under Hudson for double jeopardy purposes); Keyes v. State, 708 So. 2d 540 (Miss. 1998) (stating, as alternative ground for affirming conviction, that license suspension for not timely requesting trial after failing breath test does not constitute punishment for double jeopardy purposes under Hudson); State v. Howell, 575 N.W.2d 861 (Neb. 1998) (applying Hudson to determine that license suspension for refusal to submit to chemical test is not punishment for purposes of double jeopardy); State v. Lomas, 955 P.2d 678 (Nev. 1998) (applying Hudson to determine that suspension of license based on blood alcohol content exceeding legal limit is not

-

punishment for purposes of double jeopardy); State v. Price, 510 S.E.2d 215 (S.C. 1998) (applying Hudson to determine that license suspension for refusal to submit to chemical test is not punishment for purposes of double jeopardy).

First, the seven-day administrative suspension does not involve an affirmative restraint, for it is "certainly nothing approaching the 'infamous punishment' of imprisonment." Hudson, 522 U.S. at 104, 118 S. Ct. at 496 (quoting Flemming v. Nestor, 363 U.S. 603, 617, 80 S. Ct. 1367, 1376, 4 L. Ed. 2d 1435 (1960)). "If occupational debarment from the banking industry [in Hudson] cannot be considered an affirmative disability or restraint, then quite obviously the temporary suspension of [one's] driving privilege also cannot be so considered." Lomas, 955 P.2d at 681.

Second, drivers' license suspensions historically have not been considered punishment in Virginia. See, e.g., Brame, 252 Va. at 130-31, 476 S.E.2d at 181-82. The "'revocation of a privilege voluntarily granted'" is an act which "'is characteristically free of the punitive criminal element.'" Hudson, 522 U.S. at 104, 118 S. Ct. at 496 (quoting Helvering v. Mitchell, 303 U.S. 391, 399 & n.2, 58 S. Ct. 630, 633 & n.2, 82 L. Ed. 2d 917 (1938)); see also Commonwealth v. Ellett, 174 Va. 403, 414, 4 S.E.2d 762, 767 (1939) ("The operation of a motor vehicle . . . is a conditional privilege, which may be suspended

-

or revoked under the police power. . . . [It] is not a contract or property right in a constitutional sense.").

Third, the administrative license suspension does not come into play "only on a finding of scienter," although the portion of the statute providing for suspension upon refusal to submit to testing may involve a finding of scienter. See Code § 46.2-391.2; see also Price, 510 S.E.2d at 219 (under statute providing for suspension only for refusal to take test, noting that "although the sanction . . . does come into play only on a finding of scienter, . . . no one of the factors alone is dispositive").

Fourth, although the statute may "promote the traditional aims of punishment--retribution and deterrence," Hudson, 522 U.S. at 99, 118 S. Ct. at 493, "this element is present in any loss of license or privilege and is not the primary focus of the statutory scheme," State v. Strong, 605 A.2d 510, 513 (Vt. 1992) (decided under Halper), cited with approval in Brame, 252 Va. at 131-32, 476 S.E.2d at 182-83. Further, "[a]lthough deterrence is a traditional goal of criminal punishment, . . . deterrence also may serve civil goals," such as "deter[ring] drivers who entertain the idea of driving while intoxicated and . . . discourag[ing] drivers whose licenses have been revoked from engaging in similar misconduct in the future." Lomas, 955 P.2d at 682.

-

Fifth, although the behavior to which the administrative license suspension applies is already a crime, "[t]his fact is insufficient to render the [sanction] criminally punitive, particularly in the double jeopardy context." Hudson, 522 U.S. at 105, 118 S. Ct. at 496; see United States v. Ursery, 518 U.S. 267, 292, 116 S. Ct. 2135, 2149, 135 L. Ed. 2d 549 (1996) ("[I]t is well settled that '[a legislature] may impose both a criminal and a civil sanction in respect to the same act or omission.'" (quoting Helvering, 303 U.S. at 399, 58 S. Ct. at 633)).

Sixth, the administrative license suspension statute is rationally connected to a purpose other than criminal punishment, for it furthers the government's remedial goal of maintaining safety on public roads. See Brame, 252 Va. at 133, 476 S.E.2d at 183; Tench, 21 Va. App. at 205, 462 S.E.2d at 924.

Seventh, we cannot say the seven-day suspension appears excessive in relation to this remedial purpose. As the Court observed in Brame, "the length of the period necessary to [accomplish the remedial purpose] is a matter within the sound discretion of the General Assembly," and "[i]t can hardly be said the discretion has been abused in light of the fact that Virginia's seven-day period is shorter than any of the periods considered in . . . out-of-state cases . . . the majority [of which] have suspension periods of ninety days or more . . . ." Brame, 252 Va. at 133, 476 S.E.2d at 183; see Lomas, 955 P.2d at 681 (holding that ninety-day minimum suspension not excessive);

-

<u>Powers</u>, 694 N.E.2d at 326, 328-29 (upholding indefinite administrative suspension).

Therefore, here, like in <u>Hudson</u>, "there simply is very little showing, to say nothing of the 'clearest proof' required by <u>Ward</u>," that the administrative license suspension is criminal in nature. <u>Hudson</u>, 522 U.S. at 105, 118 S. Ct. at 496.

Indeed, appellant concedes that in light of <u>Hudson</u> a proper administrative license suspension is not punitive in nature such that a subsequent prosecution for driving under the influence arising out of the same incident does not violate the double jeopardy prohibition. He nevertheless contends that the suspension of his license pursuant to Code § 46.2-391.2 was unlawful because, due to his asthma, he neither produced a breath test result showing a violation of the DUI statute nor refused to submit to a breath test. Without such a showing, he contends, the administrative suspension was improperly applied and became punitive, even though a suspension imposed under proper circumstances would not have been punitive.

We disagree. As the United States Supreme Court noted in <u>Hudson</u>, a court determining whether a supposed civil sanction constitutes punishment for purposes of double jeopardy must "evaluat[e] the 'statute on its face,'" <u>Hudson</u>, 522 U.S. at 101, 118 S. Ct. at 490-91 (quoting <u>Kennedy</u>, 372 U.S. at 169, 83 S. Ct. at 567), rather than "'the character of the actual sanctions imposed,'" <u>id.</u> at 101, 118 S. Ct. at 490 (quoting

-

Halper, 490 U.S. at 447, 109 S. Ct. at 1901).  Therefore, assuming without deciding that appellant's license was improperly suspended under Code § 46.2-391.2, we nevertheless conclude, in keeping with the above analysis, that the administrative suspension was not punishment for purposes of double jeopardy.  Cf. Robertson v. Commonwealth, 181 Va. 520, 537, 25 S.E.2d 352, 358 (1943) (noting that "the power to decide includes the power to decide wrong[ly] and [that] an erroneous decision is as binding [for purposes of contempt] as one that is correct until set aside or corrected in a manner provided by law" (quoting Freeman on Judgments § 357, at 744 (5th ed.))). Any deviation from proper procedure does not change the fundamental character of the sanction, which is civil and remedial.  Appellant's remedy was to challenge the suspension as provided in the statute, a remedy he apparently chose to disregard.

For these reasons, we hold that appellant's conviction for driving under the influence following the administrative suspension of his license did not violate the Double Jeopardy Clause and, therefore, we affirm his conviction.

Affirmed.

-